ENCARNACIÓN ABOY VDA. DE CINTRÓN, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN JUAN, SECCIÓN PRIMERA, recurrido.

Núm. 1001.—*Sometido:* Julio 16, 1937.—*Resuelto:* Julio 31, 1937.

*Dubón & Ochoteco,* abogados de la recurrente;

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

En mayo 13, 1876, doña Mónica Vizcarrondo compró una parcela de terreno que en la escritura de adquisición inscrita en el registro se describe como sigue:

"Pedazo de terreno compuesto de treinta y nueve metros de frente a la carretera que conduce a Río Piedras con la que colinda por el Sur y el fondo que le corresponde hasta el mar con el que colinda por el Norte y por cuyo lado tiene una extensión de treinta y cinco metros, lindando además por el Este y Oeste con más terrenos del señor vendedor."

A virtud de diferentes trasmisiones adquirió la propiedad de la parcela doña Asunción Andino viuda de Guerra Mondragón quien en 1907 con motivo de una permuta de sesenta metros cuadrados con el dueño del predio colindante don Antonio Alvarez Nava describió su finca, quedando desde entonces inscrita en el registro de acuerdo con esa descripción, así:

"UN SOLAR que mide treinta y siete metros por su frente a la carretera, treinta y siete metros por su frente al mar y ciento veinte metros de fondo, situado en el barrio de Santurce de este término municipal, contiguo al edificio denominado 'Convento de las Madres'; siendo sus colindancias, por el Norte, el mar, por el Sur, la carretera de San Juan a Río Piedras; por el Este, antes don Francisco Ramos Latour, hoy el otro compareciente Sr. Alvarez Nava y por el Oeste el citado 'Convento de las Madres', hoy escuela de caridad de niñas perteneciente al Pueblo de Puerto Rico."

Como puede verse, en la inscripción primitiva no se fijó la extensión de la parcela desde la carretera al mar, extensión que quedó fijada en la inscripción de 1907 en ciento veinte metros.

Nuevas trasmisiones tuvieron lugar hasta que la finca fué adquirida finalmente por la recurrente doña Encarnación Aboy viuda de Cintrón por adjudicación en pública subasta en marzo 18, 1931, bajo la descripción de 1907.

Así las cosas, la recurrente encomendó a dos ingenieros civiles la medición de su propiedad quienes certificaron su

trabajo demostrativo de que la finca tenía en vez de 120 metros de fondo, 147.68 por un lado y 147.35 por otro o sea una diferencia de 27 metros y fracción de más

A los efectos de acreditar ese hecho otorgó ante notario el 28 de junio de 1937 un acta de rectificación que presentó en el registro acompañada de la certificación y el plano de los ingenieros, de varias copias certificadas de otras escrituras y de un plano levantado en abril 23, 1930, por la División de Terrenos Públicos y Archivos del Departamento del Interior, negándose el registrador a hacer la rectificación por medio de la siguiente nota:

"DENEGADA la rectificación solicitada, por observarse que éste no es el procedimiento adecuado para inscribir la ampliación o extensión de las medidas lineales de una finca; . . ."

Contra ella se interpuso el presente recurso gubernativo. En su alegato sostiene la recurrente su derecho a hacer por sí misma la rectificación y a que se inscriba en el registro. Cita en apoyo de su contención el artículo 28 del Reglamento para la Ejecución de la Ley Hipotecaria, las resoluciones de la Dirección General de los Registros de marzo 14, 1876 y septiembre 7, 1880 y las decisiones de esta corte en *Cobb* v. *Registrador*, 12 D.P.R. 218, *Figueroa* v. *Registrador,* 22 D. P.R. 657, *Delgado* v. *Registrador,* 29. D.P.R. 867 y *Portocarrero* v. *Registrador,* 34 D.P.R. 292. También a 1 Galindo 581, Ed. 1903.

Hemos examinado el artículo 28 del Reglamento para la Ejecución de la Ley Hipotecaria y no contiene disposición alguna relativa al asunto en controversia. La cita se hizo sin duda siguiendo las resoluciones de la Dirección General de los Registros de marzo 14, 1876 y septiembre 7, 1880 que se invocan, que se refieren a un Reglamento anterior al que rige en esta Isla desde 1893.

También hemos examinado las indicadas resoluciones y a nuestro juicio en vez de favorecer la contención de la recurrente justifican la actitud asumida por el registrador.

La primera aparece en la Colección Oficial de Leyes, Reales Decretos, Reales Ordenes, Circulares y Resoluciones que se han dictado referentes al Registro de la Propiedad Inmueble y de los demás Derechos Reales . . . formada por la Dirección General de los Registros Civil y de la Propiedad y del Notariado, página 262 del tomo que contiene las de 1874–78, siendo sus considerandos y parte dispositiva, como sigue:

"Considerando que si bien el art. 28 del Reglamento general vigente dispone que cuando no resulten en los títulos que se presenten, designados de igual manera que en el Registro, el nombre, la situación, la medida superficial, los linderos u otra circunstancia importante, en la inscripción que se extienda se expresarán las circunstancias que hayan variado, haciéndose simple referencia de las demás, este precepto no debe entenderse en el sentido de que cualquiera que sea la diferencia advertida, aún cuando ésta haga dudar de la identidad de las fincas, deba practicarse el asiento solicitado; porque, aparte de que pugnaría con las amplias facultades que la Ley concede al Registrador para calificar los documentos tanto en su forma extrínseca como en la intrínseca, sería autorizar la involucración y desorden en los libros y sus fincas, y dar margen a fraudes y perjuicios para el Tesoro público;

"Considerando que la verdadera interpretación del referido artículo 28 no es otra que la de evitar repeticiones innecesarias en los asientos de los libros cuando la descripción que de las fincas haya de hacerse sea igual a la que conste anteriormente en el Registro, y consignar únicamente las diferencias que resulten en cualquiera circunstancia importante; entendiéndose que estas diferencias no han de ser de entidad tal que por sí hagan racionalmente sospechar acerca de la identidad o igualdad de la finca, sino únicamente aquellas que sean consecuencia de la naturaleza mudable de las circunstancias que se determinan en las inscripciones, como los linderos, uso agrícola, precio, nombre o número de la finca; o las que procedan de accidentes naturales, como el aumento o disminución de una heredad por aluvión o fuerza del río, o en fin, las que procedan de error, falsa apreciación o cualquiera otra causa atendible en que anteriormente hubiere podido incurrirse en la descripción de una finca;

"Considerando que en el caso objeto de esta consulta los interesados se limitan a asegurar, bajo su mera palabra, que según la medición practicada, la verdadera cabida de la finca era de 98 yugadas

de tierra y no de 80, como aparece de los asientos del Registro, sin acreditar que la diferencia de 18 yugadas, o sean 86.400 varas aragonesas cuadradas, sea debida a error sufrido en la medición anterior, por lo cual y mientras esto no tenga lugar, da motivo a presumir que esa diferencia entre ambas medidas sea debida a aumento u ocupación posterior de terrenos circunvecinos, o a ocultación hecha para disminuir los impuestos que graven sobre la finca, a cuya última suposición podría inducir el ser los linderos los mismos y el haberse practicado la primera inscripción en virtud de certificación librada con referencia a los amillaramientos del Ayuntamiento;

"Considerando que en ningún caso puede el Registrador practicar legítimamente la inscripción que se solicita respecto de las yugadas no inscritas, pues siempre habrá de exigir la justificación del dominio o de la posesión que prescribe el artículo 20 de la Ley, y hacer el pago oportuno de derechos a la Hacienda en cuanto a las mismas, al menos mientras no se prueba concluyentemente, a juicio del Registrador y sin perjuicio de los recursos legales, que realmente se sufrió en la primera medición un error involuntario por parte de los peritos o agrimensores encargados de la misma;

"Esta Dirección general ha acordado resolver la consulta del Registrador de la propiedad de Tarazona, declarando improcedente la inscripción de la escritura de venta presentada, en cuanto a las 18 yugadas que resultan de diferencia entre la descripción de la finca según aparece del Registro, y la que se hace en dicho documento, mientras no se acredite la legítima adquisición de las mismas con arreglo al art. 20 de la Ley hipotecaria y demás disposiciones legales."

Y la segunda que aparece publicada en la página 465 del tomo siguiente de dicha colección 1879–82, se pronuncia en igual sentido.

Con respecto a las cuatro decisiones de esta corte que se citan, bastará referirnos a dos de ellas—la de *Delgado* y la de *Portocarrero,* supra—pues la primera analiza y aplica las anteriores de Cobb y Figueroa, supra. En la de Delgado la corte se expresó así:

"Al resolver el caso de *Cobb* v. *El Registrador de la Propiedad,* 12 D.P.R. 218, dijimos que 'es punto resuelto por diferentes resoluciones de la Dirección General de los Registros de la Propiedad, que las diferencias de poca importancia que se advierten en la cabida

de las fincas entre lo que resulte de los asientos del registro y lo que aparezca de los documentos que se presenten para su inscripción, no son bastantes para negar la identidad de la finca, máxime cuando en los linderos no hay ninguna diferencia, y debe el registrador hacerlas constar en el registro en la forma que determina el reglamento.'

"Posteriormente, bajo la anterior teoría, resolvimos el caso de *Figueroa* v. *El Registrador de Arecibo,* 22 D.P.R. 657, aunque con el voto disidente de uno de los Jueces Asociados.

"En la decisión de *Cobb* v. *El Registrador,* supra, citamos la de la Dirección General de los Registros de la Propiedad de 9 de noviembre de 1877, expresiva de que deben inscribirse las fincas comprendidas en una escritura, que aparecen con medida superficial distinta de la que resulta de los antiguos libros, cuando esta diferencia es escasa; y escasa es en el presente caso pues sólo es de seis cuerdas y no llega por tanto a un diez por ciento.

"Y no importa que no fuera presentada al registro la certificación de mensura practicada con citación del vendedor y de los colindantes, pues precisamente ése fué el punto de disidencia en el caso de *Figueroa* v. *El Registrador de Arecibo,* supra, que no sostuvo la mayoría del tribunal.

"Y no hay perjuicio de tercero en la rectificación pedida, pues del registro aparecería que la rectificación se practica en vista de las manifestaciones de Manuel Delgado Toledo y al adquirir un tercero cualquier derecho real en la finca puede exigir al vendedor lo que conduzca a la seguridad de su derecho sobre la cabida de la finca si alguna duda tuviere sobre ella." *Delgado* v. *Registrador,* 29 D.P.R. 867, 869.

Y en la de *Portocarrero* quedó establecida la siguiente doctrina:

"La cabida de una finca que aparece inscrita en el registro, no puede ser aumentada, mediante acta aclaratoria que solamente dice que según una mensura resulta de mayor cabida, sin especificar el sobrante, mientras no se acredite la legítima adquisición del exceso, a no ser que éste sea de escasa importancia en relación con la cabida total o se pruebe que en la primera medición solo se sufrió un error involuntario." *Portocarrero* v. *Registrador,* 34 D.P.R. 292.

Aparte de que toda esa jurisprudencia fué sentada tratándose de fincas rústicas, veamos si las circunstancias que en este caso concurren lo colocan dentro de ella.

La diferencia de cabida que se trata de rectificar es importante. De acuerdo con la descripción de 1907 la finca tenía 37 metros por su frente a la carretera y otros 37 por su frente al mar, siendo la extensión de su fondo 120 metros, lo que da una superficie de 4,440 metros cuadrados, y de acuerdo con el acta cuya inscripción se solicitó y fué denegada los 120 metros del fondo aumentaron a 147 y fracción lo que da una superficie de más de 5,439 metros que implica un aumento de más de mil metros o sea alrededor de veinte y tres por ciento.

Pero hay más. Si bien las colindancias permanecen las mismas, hay una que cautelosamente se fijó en la escritura de 1876 como sigue: ''el fondo que le corresponda hasta el mar con el que colinda por el Norte,'' manifestando a este respecto el registrador, en su alegato, lo que sigue:

''Deseamos llamar la atención, y esto es de conocimiento público, que muchas fincas urbanas, radicadas en esta Ciudad, a lo largo de la vieja carretera central, hoy Avenida Ponce de León, entre las paradas 10 y 26, más o menos, aparecen inscritas en el Registro de la Propiedad con la expresión de la medida lineal de su fondo, y, además, con la constancia de colindar por su fondo con 'el mar' o 'los manglares', y asombra sólo pensar lo que resultaría si se permitiera a cada dueño de tales fincas urbanas inscribir la extensión hasta 'el mar' o 'los manglares' de la medida lineal de sus fincas.

''También es de conocimiento público la variación que ha sufrido el terreno a lo largo de dicha Avenida, por desecación de las playas o manglares que quedan a ambos lados de dicha carretera o avenida.''

Siendo ello así, no nos parece que el registrador actuara en contra de las indicaciones que hace el comentarista Galindo en la propia cita que transcribe la peticionaria en su alegato, a saber:

''Con respecto a diferencias en la medida superficial de las fincas, queda más a la discreción del Registrador, que para negarse o no a inscribir, no ha de desdeñar los antecedentes que le suministren, el conocimiento de las personas, origen de la finca, tiempo que se posee,

y demás datos que fácilmente se adquieren a poco de servir un Registro.'' 1 Galindo 581, Ed. 1903.

No es que resolvamos que la recurrente tenga o no tenga razón substancial en cuanto a ser dueña de un solar de 147 metros y fracción de fondo. Lo que resolvemos es que en un caso como éste para corregir el error que pueda existir no puede la parte interesada actuar por sí sola, si que debe hacerlo con la intervención de sus colindantes, especialmente con el colindante del Norte por ser dicha colindancia una cuya fijación puede haber variado de hecho por haberse ganado terrenos al mar que es aquí una ensenada o ser susceptible de diferente apreciación hasta el punto exacto a donde llegue. Y para esos casos otorga sus remedios la ley vigente en Puerto Rico.

*Debe confirmarse la nota recurrida.*

El Juez Asociado Señor Córdova Dávila no intervino.